Mary Ann J. STRAMA, Plaintiff,

v.

CITY OF CHICAGO, an Illinois municipal corporation, James Maurer, and Paul Lewis, Defendants.

No. 84 C 7271.

United States District Court, N.D. Illinois, E.D.

Aug. 7, 1985.

Rick M. Schoenfield, Ettinger & Schoenfield, Ltd., Chicago, Ill., for plaintiff.

Donald Hubert, Donald Hubert & Associates, Chicago, Ill., for defendants.

MEMORANDUM OPINION
AND ORDER

PLUNKETT, District Judge.

In this suit, Mary Ann J. Strama ("Plaintiff") alleges that the City of Chicago (the "City"), James Maurer ("Maurer"), the Executive Director of the Office of Municipal Investigation (the "OMI"), and Paul Lewis ("Lewis"), Assistant to Maurer (collectively, "Defendants"), violated her rights by firing her for sexual and political reasons. Plaintiff sues under 42 U.S.C. § 1983 for violations of her rights under Title VII, 42 U.S.C. § 2000e–5, the Fourteenth Amendment, the First Amendment, and the *Shakman* decree. Presently before us is Defendants' motion to dismiss Plaintiff's first amended complaint or sections thereof. For the reasons set forth below, Defendants' motion is granted in part and denied in part.

*Facts*

For purposes of the motion to dismiss we take as true the limited allegations in Plaintiff's amended complaint. Plaintiff was employed as an investigator in the OMI, a municipal corporation, for an unspecified period of time until she was discharged on September 16, 1983. The decision to terminate her employment was made by Maurer and Lewis, who set or approved policy and custom regarding employment in the OMI. Other discharged OMI investigators were recalled, but Plaintiff was not. Plaintiff had properly performed the duties of her office. Her refusal to interact sexually with Maurer, Lewis and others in the OMI and politics were substantial motivating factors in Defendants' decisions to terminate her employment and not to recall her. Plaintiff suffered financial loss and emotional distress as a result of her termination and failure to be reinstated, and seeks $70,000 in compensatory damages, additional punitive damages against Maurer and Lewis, and attorney's fees.

*Discussion*

1. *Timeliness*

Defendants maintain that this suit is barred by laches, citing *Kadon v. Bd. of Fire and Police Commissioners*, 45 Ill. App.2d 425, 430, 195 N.E.2d 751, 754 (1st Dist.1964), and several other cases in which Illinois courts have required certain actions challenging employment terminations to be brought within six months of the date of termination. This suit was filed approximately eleven months after Plaintiff's discharge.

Defendants properly look to state law to determine the timeliness of this § 1983 action. *See Wilson v. Garcia,* — U.S. ——, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). The state rules governing laches, however, generally apply only where equitable relief is sought. *See Mother Earth, Ltd. v. Strawberry Camel, Ltd.,* 72 Ill.App.3d 37, 28 Ill.Dec. 226, 239, 390 N.E.2d 393, 406 (1st Dist.1979); *Kadon,* 45 Ill.App.2d at 430, 195 N.E.2d at 754 (reinstatement and back pay). Here, Plaintiff seeks damages only. Defendants request that we specially apply the laches doctrine to suits involving government employment so as not to disturb government services more than necessary. We see no reason to treat suits at law involving governmental employment decisions differently than § 1983 suits at law involving any other form of governmental action. Furthermore, delay is more likely to be prejudicial where suits seek reinstatement and back pay, which become more difficult to accord over time, than damages resulting from termination, which are relatively fixed. Accordingly, we apply the state statute of limitations for personal injury actions, *see Garcia,* — U.S. at ——, 105 S.Ct. at 1947, which in Illinois is two years, Ill.Rev.Stat. ch. 110, § 13–202 (1983). Under this rule, Plaintiff's suit is timely.

2. *Municipal Liability*

Municipalities are § 1983 "person[s]" and can be sued for deprivations of federally secured rights where such deprivations are caused by the municipalities' official policies or customs. *Monell v. New York City Dept. of Social Services,* 436

U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). The causation requirement "provides a fault-based analysis for imposing municipal liability." *City of Oklahoma City v. Tuttle,* —— U.S. ——, ——, 105 S.Ct. 2427, 2434, 85 L.Ed.2d 791 (1985) (plurality opinion) (footnote omitted). "*Monell*'s 'policy or custom' requirement ... was intended to prevent the imposition of municipal liability under circumstances where no wrong could be ascribed to municipal decisionmakers." *Id.*

This case presents the question of a municipality's liability for the acts of its decisionmakers. Plaintiff has alleged that Maurer and Lewis were municipal decisionmakers. At issue are whether Plaintiff has successfully pled that their alleged acts reflected their policy or custom, and if not, whether an isolated act by individuals with the power to create city policy or custom is caused by the city for § 1983 purposes.

Plaintiff has not sufficiently pled that Maurer and Lewis acted pursuant to a policy or custom. While the complaint states that Maurer and Lewis set policy for OMI, "[n]othing in the complaint suggests that the incident was other than an isolated one unrelated to municipal policy...." *Strauss v. City of Chicago,* 760 F.2d 765, 767 (7th Cir.1985). A policy need be applied only once to give rise to § 1983 liability, *see Tuttle,* —— U.S. at ——, 105 S.Ct. at 2435 (plurality opinion), at 2439–41 (Brennan, J., concurring), but here Plaintiff has provided no allegations, such as of intended future discrimination against other women employed by OMI, to suggest the existence of a policy.

■ This raises the second issue, namely, whether the *Monell* policy or custom requirement applies when the city has delegated policy-making authority to the person who performs the unlawful act. The *Monell* standard is based on the § 1983 requirement that the city have caused the deprivation of a constitutional or other right in order to be held liable. *Respondeat superior* liability for low level employees' acts which are not taken pursuant to a policy or custom would nullify the causa-

tion requirement. Acts taken pursuant to an official policy or custom, on the other hand, are directly, not merely vicariously, attributable to the city. *See Monell,* 436 U.S. at 691–694, 98 S.Ct. at 2036–2038. In *Monell* itself, for example, the Court found that the city could be liable where the plaintiff class members claimed they were fired pursuant to a pre-existing, but newly invoked, official discriminatory policy. *Id.* at 660–661, 694–695, 98 S.Ct. at 2020–2021, 2037–2038. Where as here no official policy exists, the question is whether the city caused the alleged deprivations by delegating authority over the OMI's employment decisions to Maurer and Lewis, which authority they exercised unlawfully.

A number of courts addressing this issue have found that a city can be found liable under *Monell* on the basis of an unconstitutional employment decision of one of its officials if the city has delegated final authority over such employment decisions to that official. *See, e.g., Williams v. Butler,* 746 F.2d 431, 434–439 (8th Cir.1984), and decisions of Second, Third, Fourth, Ninth, and Eleventh Circuits cited therein. At least one district court within the Seventh Circuit declined to follow these authorities, however, because of the seemingly contrary decision in *Bell v. City of Milwaukee,* 746 F.2d 1205, 1272 (7th Cir.1984). *See Perry v. Larson,* 599 F.Supp. 727, 731 (E.D.Wis.1984).

In *Bell,* plaintiffs contended that a defendant district attorney was an authoritative decision-maker for Milwaukee County and that the County should therefore be held liable under § 1983 for his participation in a conspiracy to cover up the facts relating to a fatal shooting by a Milwaukee police officer. The Seventh Circuit disagreed, stating:

> This Court has acknowledged that at some level of authority, there must be an official whose acts reflect governmental policy, since the government necessarily acts through its agents. *Reed v. Village of Shorewood,* 704 F.2d 943, 953 (7th Cir.1983). Yet, as the district court observed, [the district attorney's] partic-

ipation in the conspiracy was simply conduct in a single case. A custom, policy, or practice of a county under *Monell* cannot normally be inferred from a single incident of unconstitutional behavior of a district attorney.... Plaintiffs presented no evidence that [the district attorney's] conduct in [this] matter was indicative of a multi-case pattern of unconstitutional activity on his part, or evidence linking his conduct with the policy of County officials.

746 F.2d at 1272 (citations omitted). This discussion led the *Perry* court to conclude:

In this circuit, then, the focus is not upon whether there exists a policy of delegating final authority to local officials who may then exercise that authority in a manner that occasionally reaps an unlawful result. Rather, the focus is on whether the act or decision alleged to be unlawful in a particular case is part of a pattern of activity that can be characterized as a policy or custom.

599 F.Supp. at 731.

We are less certain as to *Bell*'s meaning. As quoted above, *Bell* relied on *Reed v. Village of Shorewood*, 704 F.2d 943 (7th Cir.1983) for the proposition that "at some level of authority, there must be an official whose acts reflect governmental policy...." In *Reed*, the court wrote, "The plaintiffs contend that interference with their business was a policy orchestrated at the highest level of government in the Village of Shorewood. If so ... the Village would be liable." *Id.* at 953. This conclusion about acts pursuant to an "orchestrated" "policy" is directed by *Monell*. The court continued in broader terms, however, "The official acts of municipal policy makers are acts of the municipality for purposes of Section 1983 liability. See *Schneider v. City of Atlanta*, 628 F.2d 915, 920 (5th Cir.1980); *Black v. Stephens*, 662 F.2d 181, 191 (3d Cir.1981)." *Id.*

The *Schneider* case cited by *Reed* presents the position of the circuits reflected in *Williams v. Butler*, rather than the *Bell* position. In *Schneider*, a jury found that the plaintiff, a former correctional officer, was constructively discharged by one Hudson, the Director of the Bureau of Corrections, in retaliation for exercising her first amendment rights. Discussing the liability of the city, the court wrote, "At least in those areas in which Director Hudson, alone, 'is the final authority or ultimate repository of [city] power his official conduct and decisions must necessarily be considered those of one "whose edicts or acts may fairly be said to represent official policy" for which the [city] may be held responsible under § 1983.'" 628 F.2d at 920 (citations omitted).

Granting the difficulty of harmonizing the holding in *Bell* with that of *Schneider*, our best judgment as to how to interpret the controlling law dictates that we not dismiss the City of Chicago at this stage of the case. The Seventh Circuit has twice, in *Bell* and *Reed*, stated that "at some level of authority" an official's acts are attributable to the city. *Schneider*, one of the cases cited for that proposition, identifies that level of authority as that of an official who is the "final authority or ultimate repository of [city] power" in a given area. Moreover, the Supreme Court's statements in *Tuttle* suggest by negative implication that a municipality is liable when "wrong [can] be ascribed to municipal decisionmakers" regardless of whether a policy or custom exists. Accordingly, Plaintiff is entitled to relief from the city if she can prove that Maurer and Lewis deprived her of federally-secured rights and that they were final authorities or repositories of the city's power with regard to employment decisions for OMI.

We note that the Supreme Court has granted certiorari to address this issue of municipal liability for discrete acts of policymakers. *Pembaur v. City of Cincinnati*, 746 F.2d 337 (6th Cir.1984), *cert. granted*, — U.S. —, 105 S.Ct. 3475, 87 L.Ed.2d 611 (1985). Should the Court's decision affect the validity of our holding, we will of course reconsider at that time.

### 3. *Title VII*

■ It is undisputed that Plaintiff has not met the jurisdictional prerequisites to bringing a suit under Title VII for sexual harassment. Plaintiff contends, though, that she can bring a § 1983 claim to redress the violation of her rights under Title VII, and thereby avoid the requirements of Title VII. We disagree, for the reasons discussed with respect to the relationship between 42 U.S.C. § 1985(3) and Title VII in *Great American Federal Savings & Loan Assoc. v. Novotny*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979). From the comprehensive nature of Title VII's jurisdictional prerequisites and remedial scheme, we presume congressional intent to preclude recovery for Title VII violations under § 1983. *See Middlesex County Sewerage Authority v. Nat'l Sea Clammers Assoc.*, 453 U.S. 1, 20, 101 S.Ct. 2615, 2626, 69 L.Ed.2d 435 (1981). *Accord Woerner v. Brzeczek*, 519 F.Supp. 517, 519 n. 2 (N.D.Ill.1981); *Le Boeuf v. Ramsey*, 503 F.Supp. 747, 754 (D.Mass.1980), *rev'd on other grounds*, 677 F.2d 158 (1st Cir.), *rev'd en banc*, 706 F.2d 1 (1st Cir.1982); *cert. denied*, 464 U.S. 1017, 104 S.Ct. 547–548, 78 L.Ed.2d 722 (1983). *But see Huebschen v. HHS*, 547 F.Supp. 1168, 1173–1175 (W.D. Wis.1982), *rev'd on other grounds*, 716 F.2d 1167 (7th Cir.1983).

### 4. *Fourteenth Amendment*

■ A plaintiff may sue under § 1983 for violations of the fourteenth amendment without suing under Title VII even though the facts suggest a violation of Title VII as well. *Trigg v. Fort Wayne Community Schools*, 766 F.2d 299, 301–302 (7th Cir. 1985). Defendants maintain, however, that Plaintiff's allegations of sexual harassment do not state a claim under the Equal Protection Clause of the fourteenth amendment.

In *Huebschen v. HHS*, 716 F.2d 1167, 1171–1172 (7th Cir.1983), the Seventh Circuit held that sexual harassment does not violate the equal protection clause when it is aimed at a plaintiff merely as an individual. Specifically, in *Huebschen* the defendant, a female supervisor, harassed the plaintiff not because he was a male but because he was a former lover who had spurned her. *Id.* at 1172. The court's reasoning dictates that Plaintiff can prevail, nonetheless, if she can prove that Defendants harassed her sexually as a way of discriminating against her because she is a woman. Indeed the court distinguished *Woerner v. Brzeczek*, 519 F.Supp. 517 (N.D.Ill.1981), which held to that effect, from the case before it as an example of a cognizable fourteenth amendment claim of sexual harassment. *Cf. Geduldig v. Aiello*, 417 U.S. 484, 496 n. 20, 94 S.Ct. 2485, 2492 n. 20, 41 L.Ed.2d 256 (1974) (distinctions between pregnant women and "nonpregnant people" violate equal protection clause only where they are pretexts for gender-based discrimination). Accordingly, Plaintiff must be given an opportunity to prove that Defendants sexually harassed her in order to discriminate against her as a woman.

### 5. *Conclusory Allegation*

■ In Count II, Plaintiff alleges only the following fact in support of her allegation that Defendants violated the first and fourteenth amendments and the *Shakman* decree: "Political reasons were a substantial motivating factor in the defendants' decision to terminate the plaintiff's employment, and not to recall plaintiff to work in 1983." Defendants move to dismiss, contending that Plaintiff's allegation is conclusory and fails to state a claim. We agree. While it is true that dismissal is improper unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief," *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (footnote omitted), Plaintiff must make a "'short and plain statement of the claim' that will give the defendant[s] fair notice of what plaintiff's claim is and the grounds upon which it rests." *Id.* at 47, 78 S.Ct. at 103 (footnote omitted). Plaintiff's statement makes clear what her claim is, but not the grounds upon which it rests. This

omission requires dismissal. *See Strauss v. City of Chicago,* 760 F.2d 765, 767–768 (7th Cir.1985). Whereas Plaintiff's Count I allegation of sexual harassment is just barely adequate to suggest underlying facts, namely, that Plaintiff resisted sexual overtures made by Defendants and others in the OMI, Count II provides no similar indication of what role politics played in Plaintiff's alleged discharge. As a result, we dismiss Count II without prejudice. Accordingly, we need not consider the remainder of Defendants' contentions with regard to Count II.