Arthur SALKIN, Plaintiff,

v.

Harold WASHINGTON, Mayor, the City of Chicago, a municipal corporation, and Eugene Barnes, Defendants.

No. 84 C 10667.

United States District Court, N.D. Illinois, E.D.

Feb. 12, 1986.

Lawrence W. Leck, Lawrence W. Leck and Associates, Ltd., Chicago, Ill., for plaintiff.

Arthur N. Christie, Asst. Corp. Counsel, City of Chicago, Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER

MORAN, District Judge.

On April 12, 1983, Harold Washington was elected Mayor of the City of Chicago. On November 11, 1983, plaintiff was fired from his job as the chief engineer of the City of Chicago's Department of Sewers. About a year later he filed this suit under § 1983 and the 1972 Shakman consent judgment. The complaint has been amended three times and plaintiff now presents the following claims.

In count I plaintiff claims the defendants' actions deprived him of his job without a hearing, in violation of the Fifth and Fourteenth Amendments. In count II he claims the defendants' actions were motivated by concerns over his political affiliation, in violation of his First and Fourteenth Amendment rights. In count III he claims the defendants violated the 1972 Shakman consent judgment. *See Shakman v. Democratic Organization of Cook County*, 481 F.Supp. 1315, 1356–59 (N.D. Ill.1979), *as amended*, 569 F.Supp. 177 (N.D.Ill.1983). Count IV explains that defendant Barnes was acting director of the Department of Sewers when plaintiff was terminated and was directly responsible for his termination, in violation of his First Amendment rights.

Defendants have moved to dismiss the complaint, arguing that the first count has no substantive merit, the second and fourth counts suffocate in the quicksand of § 1983 pleading requirements, and the third count fails to follow the timetable set out in the Shakman decree. We agree with defendants as to the first and third counts, and accordingly dismiss those from the complaint. However, because we disagree with the defendants on the second and fourth counts, the suit survives on these claims.

### Facts

The facts as set out in plaintiff's amended complaint are these. He began working for the City in 1949. From his first job as a sewer draftsman, he gradually moved up in the engineering division at the Department of Sewers. In 1967 he was made assistant chief engineer for the Department of Sewers, and in 1976 he was promoted to chief engineer. He occupied this position until he was fired. His duties included supervising construction programs and recommending new projects to the Commissioner or Assistant Commissioner of Sewers. Plaintiff states his termination was unrelated to his job performance.

Since 1957 the basic standard used to dismiss a complaint has been "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Hishon v. King & Spaulding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984). This standard guides our analysis of plaintiff's complaint set out below.

### Count I: Deprivation of Property Without Due Process of Law

Plaintiff claims defendants wrongfully deprived him of his job by failing to provide a hearing either prior to or upon discharge. This claim can stand only if the plaintiff has a property right protected by the Constitution's due process guarantee. Although jobs are deemed property, they are so only if the jobholder has a legitimate claim of entitlement to the position. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). In the plaintiff's case he would have to allege he had

an entitlement to retain his job because of an official or unofficial state rule or policy that created the entitlement. *Id.; Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). Plaintiff has alleged neither.

Plaintiff alleges he was a "senior executive service" employee, as opposed to a "career service" employee. As defendants point out, only the latter are entitled by ordinance to discharge only for cause after a hearing. *See* Municipal Code of Chicago, §§ 25.1–5(12), 25.1–6. Plaintiff admits the same in his briefs. Given these circumstances plaintiff has no property right under an explicit state rule or policy.

Plaintiff's contention that he has an expectation of continued employment, based on years of service, also does him no good. *See Hadley v. County of DuPage,* 715 F.2d 1238, 1244 (7th Cir.1983), *cert. denied,* 465 U.S. 1006, 104 S.Ct. 1000, 79 L.Ed.2d 232 (1984). He has failed to allege an implicit rule or policy which would create a property right. Instead, he alleges that the City "had a policy of not providing hearings prior to and upon discharge of senior executive service employees" (plaintiff's third amended complaint, ¶ 17). This cuts directly against his due process claim. Because no set of facts consistent with this allegation could create a property right, we must dismiss count I.[1] Given plaintiff's three chances to amend his complaint, we dismiss this count with prejudice.

**Count II: Discharge in Retaliation for Political Association**

In count II plaintiff sues the City and Mayor Washington, in his individual and official capacity, for discharging him because he refused to politically support the Mayor. Rather than contest plaintiff's contention that his First Amendment rights were violated, defendants argue that this claim cannot withstand the pleading requirements of § 1983 actions.

■ In order to successfully impose liability on a municipality like the City under § 1983, the requirements of *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), must be met. In *Monell* the court determined that a city's liability cannot be based simply on the fact that it hired someone who in turn violated another's constitutional rights (the doctrine of *respondeat superior*). Rather, the city itself must have acted to cause the deprivation. Thus, the court held that "it is when execution of a government's policy or custom ... by those whose edicts or acts may fairly be said to represent official policy inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694, 98 S.Ct. at 2037. As the Supreme Court recently stated, *"Monell's* 'policy or custom' requirement should make clear that, at the least, that requirement was intended to prevent the imposition of municipal liability under circumstances where no wrong could be ascribed to municipal decisionmakers." *City of Oklahoma City v. Tuttle,* 471 U.S. —, —, 105 S.Ct. 2427, 2435, 85 L.Ed.2d 791 (1985) (city police officer shot and killed suspect without reasonable belief that suspect was armed and dangerous).

The Seventh Circuit has applied *Monell* at the pleading stage. In *Powe v. City of Chicago,* 664 F.2d 639, 650 (7th Cir.1981), the court held that "[t]he allegation of a single incident of unconstitutional conduct by a municipal employee usually does not establish a sufficient basis for suing a municipality." While this seemed to suggest that plaintiffs must also allege that a municipality's practice, policy or custom caused the unconstitutional conduct of its employees, the court has recently stated that even this is not enough to withstand dismissal in some circumstances. *Strauss v. City of Chicago,* 760 F.2d 765 (7th Cir. 1985). *Strauss* involved a single incident of unlawful arrest and injury. The plaintiff, to support his § 1983 claim, identified

---

1. We are not holding here that plaintiff's allegations were not enough, but rather that they were the wrong ones. An allegation of a custom or unofficial policy which creates a property interest is enough to survive a motion to dismiss. *See Auriemma v. City of Chicago,* 601 F.Supp. 1080, 1083 (N.D.Ill.1982).

several "customs and practices" of the City which caused the unlawful police conduct. The lower court dismissed the suit and the Seventh Circuit upheld the dismissal because plaintiff had alleged "no facts to suggest that the policies of which he [the plaintiff] complains actually exist." *Id.* at 767. The court further held that "a complaint that tracks *Monell's* requirement of official policy with bare allegations cannot stand when the policy identified is nothing more than acquiescence in prior misconduct." *Id.* at 767.

Defendants rely on *Strauss* to argue for dismissal in this case. Plaintiff's complaint alleges that "the defendant City of Chicago, a municipal corporation, and its Mayor, Harold Washington, had a policy of discharging from employment senior executive service employees who had no identifiable political affiliation" (count II, § 18) and "the defendant City of Chicago had a policy of discharging from employment those senior executive service employees who were not identified by the City of Chicago through its agents, employees and servants, and/or Mayor Harold Washington, as being politically supportive of the defendant Harold Washington" (count II, § 19). Defendants argue that plaintiff's allegations cannot stand because he has not pled any facts to support them, as required by *Strauss*.

■ We find defendants' reliance upon *Strauss* misplaced for several reasons. *Strauss* involves an occasion of police brutality against one individual. That situation poses two *Monell*-based problems not present in the instant case. First, the policy or custom which might cause the illegal conduct is hard to define. In *Strauss*, the plaintiff pled that the City had a custom and practice of hiring people for police jobs who were prone to brutality, and then en-

couraging that tendency by failing to discipline them. *See id.* at 766.[2] Second, the policy is defined in negative terms: what the City didn't do, as opposed to what it did. Both these problems make the *Strauss*-like policy hard to "attribute to a municipal policymaker," *Tuttle* at 2436, rendering the causality factor required in *Monell* difficult to prove.

In the instant case the policy is clearly articulated, "ring out the old, bring in the new," and clearly attributable to certain policymakers, namely the Mayor. Further, plaintiff is claiming that his injury was caused by "faults systemic in nature," rather than by the "isolated independent tort of an individual employee." *Strauss* 760 F.2d at 770. Of course, plaintiff must still prove the policy existed, but surely we shouldn't dismiss his complaint because he has yet to prove its allegations. *Means v. City of Chicago*, 535 F.Supp. 455, 459 (N.D.Ill.1982).

*Strauss* also recognized that the facts it called for need not be elaborate and well developed. *Id.* at 769. The minimum standard it set is: "... some fact indicating the existence of some such policy must be pled. Without some evidence apart from the fact of employment, *regardless how slight*, that a policy causing plaintiff's injury might exist, the plaintiff simply cannot proceed in court against the municipality." *Id.* at 768 (emphasis added).

Plaintiff here has pled such a fact by alleging that his dismissal had nothing to do with job performance. This fact raises the reasonable inference that some other cause, mainly the policy of discharging those not politically aligned with the Mayor, was at work in plaintiff's case. We find this fact meets Strauss' pleading requirement.[3]

**2.** The court in *Tuttle* was faced with a similarly amorphous policy of "inadequate training." *Tuttle,* 105 S.Ct. at 2436. The overriding concern of the Justices in that case, as in *Strauss,* was with the problem of establishing an affirmative causal link between the City's conduct and the plaintiff's injury, when a single incident is the only evidence of such an amorphous policy.

*Id.* at 2437 and 2440–41 (Brennan, J, concurring).

**3.** Although not cited by the defendants, the court notes that Judge Holderman recently held the other way in a similar case. *See William Adrian v. Anthony Gibbs,* 85 C 5446, slip op. (N.D.Ill. Oct. 28, 1985). We differ with the

■ Plaintiff's claim lies not only against the City but also against the Mayor in his official capacity. Washington's acts "may fairly be said to represent official policy." *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037; *see also Tuttle,* 105 S.Ct. at 2440 n. 5 (Brennan, J, concurring); *Kentucky v. Graham,* 473 U.S. ——, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). Whether the claim will also lie against Washington in his individual capacity is determined by whether the complaint alleged "any personal involvement" on his part in the illegal conduct. *Shashoua v. Quern,* 612 F.2d 282, 284 (7th Cir.1979). *See also Rizzo v. Goode,* 423 U.S. 362, 370–71, 96 S.Ct. 598, 603–04, 46 L.Ed.2d 561 (1976). In paragraph 19 of his amended complaint, plaintiff alleges that the Mayor personally identified those senior executive service employees who were not his political supporters. This allegation of personal involvement satisfies the requirement of *Shashoua* and so the claim will lie against Washington in his individual capacity as well.

### Count III: Violation of the Shakman Decree

■ In count III plaintiff claims his discharge violated the 1972 Shakman consent judgment (decree). The decree resolved the voting rights claims brought by plaintiffs by prohibiting patronage in the City's employment decisions except for those positions which "by their nature involve policymaking to such a degree or are so confidential in nature as to require that discharge from such positions be exempt." *Shakman v. Democratic Organization of Cook County,* 481 F.Supp. 1315, 1358 (N.D.Ill. 1979). Plaintiff's position is in this exempt category (and the nature of his position may ultimately be fatal to plaintiff's § 1983 claims, but those cannot be determined in a motion to dismiss). *See Shak-*

*man,* 569 F.Supp. 177, 201 (N.D.Ill.1983). Plaintiff claims he should be excluded from this policymaking category because his job was primarily ministerial. However, the decree has a 90-day limitation on actions challenging exempt status. *Shakman,* 569 F.Supp. at 207. Plaintiff was fired on November 11, 1983, and brought suit alleging, *inter alia,* the Shakman violation on December 13, 1984, more than 90 days after his discharge. Plaintiff's Shakman claim must therefore be dismissed.[4]

### Count IV: Liability of Eugene Barnes

■ Defendant Eugene Barnes, as acting director of the Department of Sewers, terminated plaintiff on November 11, 1983. Count IV claims Barnes' actions violated plaintiff's First Amendment rights. Plaintiff does not specify whether count IV is brought against Barnes in his official or individual capacity, but the court assumes the claim is against Barnes in his official capacity. Such a suit against Barnes is equivalent to a suit against the City because the "real party in interest is the entity." *Kentucky v. Graham,* 473 U.S. at ——, 105 S.Ct. at 3105. As we have already determined, plaintiff's First Amendment suit will lie against the City. It will therefore also lie against Barnes in his official capacity.

### Conclusion

Defendants' motion to dismiss plaintiff's complaint is granted as to counts I and III, and denied as to counts II and IV.

---

reasoning in that case and also note that the opinion fails to mention whether the plaintiff in that case alleged that his job performance was never an issue in his discharge.

**4.** Plaintiff argues that the 90-day limitation should be tolled by promises he received from the City about another position in the govern-

ment. However, plaintiff fails to allege when those promises were made or what time span they cover. Without this information the court assumes they were made shortly after he was fired and did not extend the ten months necessary to bring the claim within the 90-day limit.