Kenneth ZUREK, Plaintiff,

v.

Michael HASTEN, et al., Defendants.

No. 80 C 3365.

United States District Court, N.D. Illinois, E.D.

Dec. 15, 1982.

See also D.C., 550 F.Supp. 125.

Kenneth Zurek, pro se.

Tyrone C. Fahner, Atty. Gen. of Illinois, Roger P. Flahaven, Asst. Atty. Gen., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Kenneth Zurek ("Zurek") has filed this action against officials and employees of the Illinois Commerce Commission ("ICC"),[1] charging an array of torts and civil rights violations in connection with Zurek's discharge as an ICC accountant. Defendants have moved to dismiss all five counts of Zurek's current amended complaint filed July 22, 1982 (the "Complaint"). This opinion deals only with Counts II, III and IV:[2]

1. Count II, brought under 42 U.S.C. § 1983 ("Section 1983"), charges that defendants' stigmatization of Zurek in connection with his discharge infringed Zurek's constitutionally protected liberty interests by foreclosing him from other employment opportunities.

2. Count III is a pendent state law defamation claim.

3. Count IV asserts the pendent tort claim of retaliatory discharge.

For the reasons stated in this memorandum opinion and order, defendants' motion is denied as to each of those counts.

### Count II

Count II asserts Zurek was deprived of his constitutionally protected "liberty" because a derogatory letter placed in Zurek's personnel file[3] allegedly foreclosed, as the Court put it in *Board of Regents v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33

1. Defendants are Michael V. Hasten, ICC chairman during the relevant period, Charles Stalon, Helen Schmid and Alfred Reichman, past or present ICC members, and Neill Dimmick ("Dimmick"), Chief ICC accountant during the events at issue.

2. Two prior opinions have dealt in part with the legal sufficiency of the Complaint:

   1. This Court's June 29, 1982 opinion ("Opinion I") upheld allegations now embodied as part of Count II.
   2. Its October 28, 1982 opinion ("Opinion II") dismissed Count I.

Zurek has been delinquent in responding as to Count V, and this Court has recently extended his time to file a memorandum on that score.

3. Count II ¶ 4 alleges:

   That Hasten and Dimmick on or about June 25, 1980 put in Zurek's personnel file a letter written by Dimmick containing false, stigmatizing, defaming and malicious information regarding Zurek's termination and Zurek's period of employment with ICC.

L.Ed.2d 548 (1972), "his freedom to take advantage of other employment opportunities." Specifically, Count II ¶¶ 11–12 allege the letter and the circumstances of his termination bar Zurek from Internal Revenue Service ("IRS") employment, and Count II ¶ 16 asserts Zurek's actual inability to obtain other professional employment since his termination.

Though Opinion I found comparable allegations sufficient to state a Section 1983 claim, defendants nevertheless advance several reasons for dismissing Count II:[4]

    1.  Zurek did not adequately allege the stigmatizing information was publicized.

    2.  Zurek did not allege defendants' actions actually precluded him from securing employment.

    3.  Zurek failed to request, and thus was never denied, a "name clearing" hearing.

    4.  Zurek failed to attach a copy of Dimmick's letter as an exhibit to the Complaint.

None of those arguments warrants departure from Opinion I's ruling.

As to the public disclosure issue, the Complaint does seem to look in two directions. Count II ¶ 6 refers to the offending letter as having been put "in general circulation," but there is no *specific* allegation of delivery (either of the document or its contents) to any prospective employer. In much the same way, it is unclear whether Zurek's inability to obtain IRS employment is the product of actual unsuccessful applications consequent on the stigmatizing disclosure, or rather simply a prediction of that possibility (see Count II ¶ 12, which reads like the latter, and Count II ¶ 14, which states clearly premature claims of expected effects on Zurek's career as a lawyer).

■  What saves Zurek is the necessary drawing of inferences most favorable to him (appropriate on a motion to dismiss). So taken, Count II suggests defendants actually divulged the stigmatizing information to the IRS and are also willing to disclose it to any other prospective government employer. As *Larry v. Lawler,* 605 F.2d 954, 958 (7th Cir.1978) makes clear, such potential government-wide disclosure would satisfy any requirement of public dissemination.[5]

Those same allegations, coupled with the same favorable inferences, meet the pleading requirement of "tangible" loss, *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1161, 47 L.Ed.2d 405 (1976), that must accompany the stigma: foreclosure of (as distinct from mere interference with) employment opportunities. Zurek's claimed inability to obtain any government employment would be a deprivation of constitutionally protected liberty interests under *Larry,* 605 F.2d at 958.[6]

■  Nor does Zurek's failure specifically to request a "name clearing" hearing jeopardize his liberty deprivation claim. As soon as they were aware of this action (it was filed one day before Zurek's actual termination), defendants were aware of his desire for an opportunity to rebut the charges underlying his discharge. Despite that knowledge, defendants have never offered Zurek such an opportunity. Absent some showing that a particular form of

---

**4.**  Opinion I does not preclude this Court from reconsidering its earlier stance, contrary to Zurek's belief. Law of the case principles are inapposite because the issues now raised by defendants were never addressed to this Court (defendants' motion to dismiss the corresponding part of Zurek's earlier complaint was justifiably focused on their inability to perceive any "liberty" claim within that impenetrable document). In any event, even were the doctrine applicable, it would not preclude reconsideration (particularly at this early stage in the litigation). *See* 1B Moore *Federal Practice* ¶ 0.404[4], at 451.

**5.**  As *Larry* intimates (605 F.2d at 957–59), public dissemination of the defamatory information may have no significance except as it bears on the extent of employment foreclosure—the focus of the due process inquiry in liberty deprivation cases.

**6.**  Because the case is unfortunately still at the pleading stage, it is unnecessary to decide now whether inability to secure any IRS hiring would alone implicate the Due Process Clause. *Larry* 605 F.2d at 958 distinguishes between the denial of a particular government position and a government-wide employment bar.

request is necessary, defendants' inaction must be viewed as tantamount to a refusal to afford a "name clearing" hearing. And as defendants concede, denial of such a hearing infringes the Due Process Clause (assuming a protected liberty interest has been impaired). *See Codd v. Velger,* 429 U.S. 624, 627, 97 S.Ct. 882, 884, 51 L.Ed.2d 92 (1977) (per curiam).

■ Finally, Zurek's failure to annex Dimmick's allegedly stigmatizing letter to the Complaint is not fatal. Federal (unlike Illinois state) pleading does not impose such a requirement. Indeed, if Zurek's allegations as to the nature of the letter are accurate, it would be most unfair to force its public disclosure by making it part of the pleadings (an absolutely privileged vehicle for possible defamation and stigmatization).[7]

Count II thus survives defendants' renewed attack. Their motion for its dismissal is denied.

### Counts III and IV

■ Counts III and IV are pendent state tort claims, respectively asserting defamation and retaliatory discharge. At the threshold defendants assail both counts on sovereign immunity grounds, contending this action is effectively directed against the State of Illinois itself in violation of Ill.Rev.Stat. ch. 127, § 801. That position is obviously unsound, for (1) defendants' claimed wrongful acts allegedly exceeded their authority and (2) the relief sought by Zurek (individual damages against defendants) would not "control the operations of the State or subject it to liability." *See Hoffman v. Yack,* 57 Ill.App.3d 744, 748, 15 Ill.Dec. 140, 144, 373 N.E.2d 486, 490 (5th Dist.1978).[8] This opinion turns, then, to claimed defects in the individual Counts.

---

7. If the letter is in Zurek's ICC personnel file, defendants obviously have it. If not, discovery rather than pleading is the way to address the matter.

8. Defendants also advance an equally invalid Eleventh Amendment argument. Claims grounded in *state* law do not appear to impli-

#### 1. *Count III*

As to Zurek's defamation-based claim defendants assert:

1. Any defamatory statements are absolutely privileged under *McLaughlin v. Tilendis,* 115 Ill.App.2d 148, 153, 253 N.E.2d 85, 86–88 (1st Dist.1969), absent any allegation they were made to private individuals.

2. Zurek failed to plead "actual malice," a vital element of any defamation claim against a public official. *New York Times Co. v. Sullivan,* 376 U.S. 254, 279–80, 84 S.Ct. 710, 725–26, 11 L.Ed.2d 686 (1964).

Neither contention has merit.

■ First, *McLaughlin* itself recognizes, 115 Ill.App.2d at 152, 253 N.E.2d at 87 (quoting *Cook v. East Shore Newspapers, Inc.,* 327 Ill.App. 559, 577–78, 64 N.E.2d 751, 759–60 (4th Dist.1945)) the absolute privilege extends only to a narrow category of communications, including those "made in the discharge of a duty under express authority of law, or to heads of the executive departments of the State, and matters involving military affairs." True enough, Dimmick's letter and other derogatory statements by defendants *in deciding whether to terminate Zurek* may have been *expressly* authorized by state law. But any dissemination of such defamatory information to outsiders (including IRS officials) is not similarly sanctioned (or more accurately, defendants have not identified any state law so doing). *See Yack,* 57 Ill.App.3d at 748–49, 15 Ill.Dec. at 144, 373 N.E.2d at 490 (defendant's false accusation not privileged because not in furtherance or within the scope of his duties as supervisor).

■ Defendants' second argument is equally fallacious, because its premise—that Zurek is a "public official" for First Amendment purposes—is mistaken. *Rosen-*

---

cate that Amendment at all, for it really defines the sovereign immunity defense to a federal cause of action (such as a Section 1983 claim). But even if it did apply, it would not enlarge the scope of immunity beyond what the State claims for itself.

*blatt v. Baer,* 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966), the most recent Supreme Court exposition of that nebulous term, put the question in two ways:

1. whether the government employee has, or appears to the public to have, "substantial responsibility for or control over the conduct of governmental affairs" (*id.* at 85, 86 S.Ct. at 676); and

2. whether the employee's "position in government has such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it, beyond the general public interest in the qualifications and performance of all government employees" (*id.* at 86, 86 S.Ct. at 676).

Zurek simply does not fall within either contour of the public official profile.[9]

Perhaps defendants could establish (as they urge) Zurek was a significant evidentiary source as an expert witness in some ICC rate proceedings. But lacking either prosecutorial or adjudicatory responsibility, Zurek did not have "substantial responsibility for or control over" the conduct or resolution of those cases. By the same token, Zurek plainly did not have "apparent importance" arousing public interest greater than that regarding the typical government employee.

Our Court of Appeals' liberal construction of the "public official" doctrine in *Meiners v. Moriarity,* 563 F.2d 343, 351–52 (7th Cir. 1977) is clearly distinguishable. *Moriarity* bestowed "public official" status on federal narcotics agents because their "decisions to search and to arrest *directly* and *personally* affect individual freedoms," 563 F.2d at 352 (emphasis added). At most Zurek's involvement in the rate proceedings had only an *indirect economic* impact on the general public (even assuming his testimony influenced the disposition of these cases).

9. Defendants must recognize the limitations imposed on this kind of argument at the pleading stage: They are restricted to the Complaint's allegations, and construed in Zurek's favor at that. However, because this action

Accordingly Count III withstands defendants' Fed.R.Civ.P. 12(b)(6) challenge. It too must be answered.

## 2. Count IV

■ Defendants urge a retaliatory discharge claim can be brought only against an employer (here the ICC) and not against the individuals responsible (the individual defendants). However none of the handful of Illinois cases involving the retaliatory discharge tort has foreclosed this possibility. In fact, in the one reported lawsuit brought against both the employer and the "retaliating" supervisor, *Rozier v. St. Mary's Hospital,* 88 Ill.App.3d 994, 44 Ill.Dec. 144, 411 N.E.2d 50 (5th Dist.1980), the Appellate Court, though dismissing the case on a variety of grounds, passed up the opportunity to confine this tort to employers.

Moreover, it would distort normal tort doctrine, once a cause of action is recognized, to impose liability on a wrongdoer's principal but not on the wrongdoer himself. And at least two other policy reasons support the normal concept of individual responsibility here:

1. Deterrence—always a goal of intentional tort liability—would be better served if both the active wrongdoer and the employer were assessed with joint and several responsibility.

2. Even more important here, if and to the extent sovereign immunity would insulate government *employers* from liability, any government employee who has been terminated on grounds offensive to public policy would have no remedy for that wrong unless the responsible co-employees could be sued.

Count IV also withstands dismissal.

### Conclusion

Defendants' motion to dismiss is denied as to each of Counts II, III and IV. They are ordered to answer those Counts on or before December 30, 1982.

has been so slow to develop (primarily due to Zurek himself) this opinion will give defendants the benefit of a good deal of doubt to provide further guidance for the parties as to Count III's required proof.