P. REGINALD FELLHAUER, Plaintiff-Appellant, v. THE CITY OF GE-
NEVA *et al.*, Defendants-Appellees.

Second District No. 2—88—1196

Opinion filed November 2, 1989.

594

INGLIS, J., concurring in part and dissenting in part.

Stephen M. Cooper, of Law Offices of Cooper, Storm & Petesch, of Geneva (Peter M. Storm, of counsel), for appellant.

Arvey, Hodes, Costello & Burman, of Chicago, James R. Schirott, of Schirott & Associates, P.C., of Itasca, and George E. Krippner, of Clancy & Krippner, of St. Charles (Gary L. Starkman, of counsel), for appellees.

JUSTICE LINDBERG delivered the opinion of the court:

Plaintiff, P. Reginald Fellhauer, the former director of the electrical department of the City of Geneva, Illinois, appeals from a portion of an order entered in the circuit court of Kane County on November 10, 1988, dismissing with prejudice for failing to state a cause of action on four counts of plaintiff's complaint directed at defendant, Richard Lewis (Lewis), the mayor of the City of Geneva. Plaintiff timely appeals from a judgment which is final as to all of plaintiff's claims against Lewis and in which the trial court made the required finding of appealability pursuant to Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)). The issue on appeal is whether the trial court erred in granting Lewis' motion pursuant to section 2—615 of the Code of Civil Procedure (the Code) (Ill. Rev. Stat. 1987, ch. 110, par. 2—615) to dismiss the four counts of plaintiff's first amended complaint for failing to state a cause of action.

On February 18, 1986, plaintiff filed a two-count complaint for retaliatory discharge. Count I named the City of Geneva (the City) and Richard Lewis, individually, as defendants and sought compensatory damages. Count II's allegations of fact were identical to count I and sought punitive damages against both defendants. Plaintiff's complaint was based on allegations that he was discharged from his posi-

tion as the director of the electrical department in retaliation for his refusal to perform various activities. Plaintiff's first complaint alleged that he had been appointed to his position as director of the electrical department on April 29, 1974. Lewis, having been duly elected, was sworn in as mayor of the City on May 7, 1985. During 1984 and the spring of 1985, plaintiff was involved with extensive negotiations with the Wisconsin Electrical Power Company (WEPCO) which culminated in the signing of a written agreement on April 23, 1985, between WEPCO and the City for the provision of electrical power to the City at a substantial cost savings to the City as opposed to its previous agreement with Commonwealth Edison. During the second half of 1984 and the spring of 1985, Lewis was campaigning for the office of mayor of the City. In February 1985, Lewis allegedly approached plaintiff and asked plaintiff to "slow down" the negotiations between WEPCO and the City in order to prevent the then acting mayor, Edgar Crane, from receiving the political benefit that would result from the successful conclusion of the ongoing negotiations between WEPCO and the City. Plaintiff refused to alter the course of the negotiations between WEPCO and the City.

Following Lewis' election to the office of mayor of the City in May 1985, Lewis allegedly solicited political contributions from city vendors in order to retire Lewis' election campaign deficit. Some of the vendors solicited by the mayor asked plaintiff if it was necessary to make the contributions in order to continue to do business with the City. Plaintiff informed the vendors that such contributions were not necessary. Plaintiff also referred the matter to the city attorney for clarification of the propriety of such requests.

Plaintiff also alleged that shortly after Lewis became mayor, Lewis asked plaintiff to "sell out the contract with WEPCO" and negotiate a "better deal with Edison." Plaintiff responded that he, plaintiff, believed that such a course of action would be a breach of the existing contractual commitment with WEPCO and asked Lewis whether such a course of conduct might subject the City to liability to WEPCO. Lewis proceeded to negotiate with Commonwealth Edison with the intention of obtaining a better deal for the City in the purchase of electrical power.

Plaintiff alleges that due to his concerns with Lewis' actions he wrote a letter to the Wisconsin attorney representing the City in its dealings with WEPCO and asked for clarification of the situation. Thereafter, Lewis instructed the City's Wisconsin attorney to have no further dealings with the plaintiff. Lewis also instructed plaintiff to cease his involvement in the electric-supply issue.

In January 1986, while Lewis was still negotiating with Commonwealth Edison, plaintiff attempted to inform the members of the electric committee and the utility committee of the city council of the City's position on the power-supply issue. On January 20, 1986, after telling plaintiff that he intended to discuss the power-supply issue with the city council, Lewis instructed plaintiff "not to say anything." Plaintiff then wrote a letter to Lewis in which plaintiff requested a clarification as to what information he should provide the aldermen of the City and for a clarification of his duty as director of the electrical department. Immediately following receipt of plaintiff's letter, Lewis terminated plaintiff's employment with the City, a decision later approved by the city council.

Plaintiff also alleged that as part of his duties as director of the electrical department, as contained in the relevant sections of the City's Municipal Code, he had a duty to inform the aldermen of the City of all facts relevant to power-supply issues regarding Lewis' negotiations with Commonwealth Edison.

Plaintiff further alleged that Lewis in bad faith and in violation of public policy discharged plaintiff in retaliation for: (1) refusing to interfere with the course of the negotiations which resulted in the WEPCO City power-supply agreement, where such interference was requested by Lewis for the sole purpose of obtaining a political advantage; (2) refusing to cooperate with Lewis' attempts to solicit post-election campaign contributions from city vendors; and (3) refusing to withhold information regarding Lewis' attempts to negotiate with Commonwealth Edison from the city council in violation of plaintiff's duties as director of the electrical department pursuant to sections 2—70 and 12.17 of the Municipal Code of the City of Geneva (Municipal Code) (Geneva, Ill., Municipal Code ch. 2, par. 2—70; ch. 12, par. 12.17 (Supp. 1978 & Supp. 1985)).

Lewis, pursuant to section 2—615 of the Code (Ill. Rev. Stat. 1987, ch. 110, par. 2—615), moved to dismiss plaintiff's complaint, arguing that: (1) as mayor, Lewis had discretion to remove an appointed officer such as plaintiff (see Ill. Rev. Stat. 1987, ch. 24, par. 3—11—1 (relied upon by Lewis)); (2) Lewis was immune from liability under the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) for discretionary acts within the scope of his employment (Ill. Rev. Stat. 1987, ch. 85, par. 2—201); and (3) plaintiff's complaint failed to allege that Lewis' retaliatory discharge of plaintiff violated a clearly mandated public policy.

In response, plaintiff filed a motion to strike Lewis' section 2—615 motion as improper because it asserted factual matter beyond the

pleadings and raised other affirmative matter and defenses which are properly raised in a section 2—619 motion (Ill. Rev. Stat. 1987, ch. 110, par. 2—619) and not in a section 2—615 motion (Ill. Rev. Stat. 1987, ch. 110, par. 2—615). Plaintiff's response also replied to the arguments of Lewis' motion. Plaintiff's response argued in relevant part that his discharge for refusal to take certain actions violated a clearly mandated public policy as evidenced by the crime of official misconduct (Ill. Rev. Stat. 1987, ch. 38, par. 33—3) in that had he interfered with the WEPCO negotiation for Lewis' political advantage, plaintiff believed he would be committing a crime. Plaintiff also relied on the Municipal Code defining his duties, which he had alleged would be violated if he acquiesced in Lewis' request not to discuss Lewis' and Commonwealth Edison's negotiations with the city council.

Lewis, in response, cited an Appellate Court, First District case, *Morton v. Hartigan* (1986), 145 Ill. App. 3d 417, 495 N.E.2d 1159, for the proposition of law that the tort of retaliatory discharge can only be brought against an employee's employer, not a supervisor. The trial court refused to consider Lewis' assertions of qualified immunity, finding those matters improper for consideration under a section 2—615 motion (Ill. Rev. Stat. 1987, ch. 110, par. 2—615). The trial court found that plaintiff's complaint for retaliatory discharge sufficiently alleged facts indicating that plaintiff's discharge was a violation of a clearly mandated public policy. However, the trial court found that *Morton* did bar a retaliatory discharge claim against Lewis. The trial court's order dismissed plaintiff's claims against Lewis for retaliatory discharge with prejudice, however, with leave to otherwise file an amended complaint based on the trial court's view that plaintiff might be able to state a cause of action for tortious interference with contractual relations.

On February 13, 1987, plaintiff filed his first amended complaint. Count I was simply a reallegation of the retaliatory discharge claim of count I of plaintiff's first complaint against Lewis.

Count III of plaintiff's first amended complaint was entitled "wrongful interference with employment relationships" and realleged the same facts contained in count I of plaintiff's complaints. Count III further alleged that as a result of plaintiff's refusal to accede to the improper demands of Lewis, as previously discussed relative to count I, Lewis embarked on a course of action intended to cause plaintiff's employment with the City to be terminated. Plaintiff alleged that in furtherance of this course of conduct, Lewis caused a statement of charges against plaintiff to be filed with the city council, which charges were false and were filed with the intention of causing plain-

tiff's employment with the City to be terminated and/or inducing the City to terminate plaintiff's employment. Plaintiff alleged that he was terminated and such termination was proximately caused by the actions of Lewis as just described. Plaintiff also alleged that Lewis performed these actions with malice and for the sole purpose of retaliating against plaintiff.

Count IV of plaintiff's first amended complaint was entitled "42 U.S.C. 1983" and realleged the same facts as count I and alleged that such acts of Lewis violated plaintiff's rights under section 1983 of the Civil Rights Act of 1871 (Civil Rights Act) (42 U.S.C. §1983 (1982)). Count IV named Lewis individually, as well as in his official capacity as mayor of the City.

Count VI realleged all prior allegations and alleged malice and sought punitive damages against Lewis in his individual capacity.

Lewis filed another motion pursuant to section 2—615 of the Code (Ill. Rev. Stat. 1987, ch. 110, par. 2—615) to dismiss counts I, III, IV and VI for failure to state a cause of action. On November 10, 1988, the trial court granted Lewis' motion and dismissed with prejudice counts I, III, IV and VI of plaintiff's first amended complaint without leave to replead and entered the required finding of "no just reason to delay enforcement or appeal" to allow plaintiff to appeal. 107 Ill. 2d R. 304(a).

On appeal, plaintiff argues that his first amended complaint pled sufficient facts to state a cause of action for retaliatory discharge, tortious interference with an employment relationship and a civil rights violation under section 1983 of the Civil Rights Act (42 U.S.C. §1983 (1982)).

▪ "There are certain general rules of construction to be applied when a complaint is challenged for failure to state a cause of action. The essential test of the sufficiency of the complaint is whether it reasonably informs the defendant of a valid claim under a general class of cases of which the court has jurisdiction. [Citation.] In determining the sufficiency of the complaint, the court must accept as true all well pleaded facts and reasonable inferences drawn therefrom. [Citation.] No pleading is bad in substance where it reasonably informs the opposite party of the nature of the claim. [Citation.] Finally, a complaint should not be dismissed for failure to state a cause of action unless it clearly appears that no set of facts could be proved under pleadings which would entitle plaintiff to relief." *Skinner v. Mahomet Seymour School District No. 3* (1980), 90 Ill. App. 3d 655, 656-57, 413 N.E.2d 507, 508.

■■■ The tort of retaliatory discharge in Illinois is recognized as an exception to the general rule that an at-will employment relationship may be terminated at anytime for any or no cause. (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353.) Recognition of this cause of action by our supreme court was based in part upon the common-law principle that parties to a contract may not incorporate into the contract rights and obligations injurious to the public. (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353.) An employer commits the tort of retaliatory discharge when the employer discharges an employee in retaliation for the employee's activities and the discharge of the employee by the employer contravenes a clearly mandated public policy. (*Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 421 N.E.2d 876.) In order to survive a motion to dismiss for failing to state a cause of action in retaliatory discharge, plaintiff must plead facts that establish retaliation in the firing of an at-will employee in contravention of a clearly mandated public policy. *Abrams v. Echlin Corp.* (1988), 174 Ill. App. 3d 434, 528 N.E.2d 429.

■■ The trial court dismissed with prejudice plaintiff's count in retaliatory discharge against Lewis based on a holding of the Appellate Court for the First District in *Morton v. Hartigan* (1986), 145 Ill. App. 3d 417, 495 N.E.2d 1159, that an employee could only sue his employer and not his supervisor or anyone else for the tort of retaliatory discharge. Initially, plaintiff argues that the trial court erred in deciding a question of fact on the pleadings of the complaint, namely, whether the City or Lewis was the employer of plaintiff. This argument of plaintiff's is without merit. Throughout the allegations of facts contained in plaintiff's first amended complaint, plaintiff refers to his position as director of the electric department of the City of Geneva. Plaintiff does not allege, in the alternative, that he is an employee of the mayor. The facts alleged do not lead to a reasonable inference that plaintiff is an employee of the mayor as opposed to the City, and we do not find that the trial court erred in so reading plaintiff's complaint.

Plaintiff next contends that *Morton v. Hartigan* (1986), 145 Ill. App. 3d 417, 495 N.E.2d 1159, was incorrectly decided and urges us not to follow its reasoning. Plaintiff urges us to follow the reasoning of the Federal court in *Zurek v. Hasten* (N.D. Ill. 1982), 553 F. Supp. 745, which rejected a defendant's argument that a cause of action for retaliatory discharge in Illinois can be brought only against an employer and not the agents of the employer, individually. While the Federal court's decision in *Zurek* was not binding on the court in

*Morton*, the court's opinion in *Morton* is not binding upon this court, and we respectively disagree with the conclusion in *Morton*. (*Cf. Miller v. Illinois* (N.D. Ill. 1988), 681 F. Supp 538 (Judge Shadur recognized that Federal district court applying Illinois law was bound to follow *Morton's* rejection of *Zurek* outcome where *Morton* was only Illinois case to have interpreted Illinois law on relevant issue).) The court in *Morton* reached its conclusion in reliance on our supreme court's admonition in *Barr v. Kelso-Burnett Co.* (1985), 106 Ill. 2d 520, 525, 478 N.E.2d 1354, 1356, against the undue expansion of the tort of retaliatory discharge. (*Morton v. Hartigan* (1986), 145 Ill. App. 3d 417, 421-22, 495 N.E.2d 1159, 1162.) However, in *Kelso-Burnett* our supreme court was not addressing the nature of the party defendants to a suit for retaliatory discharge but the nature and definition of what constituted a "clearly mandated public policy" for purposes of defining the scope of the limited tort of retaliatory discharge, as recognized in *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353, and further explained in *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 421 N.E.2d 876. *Barr v. Kelso-Burnett Co.* (1985), 106 Ill. 2d 520, 525-26, 478 N.E.2d 1354, 1356-57.

■ Under normal tort doctrine and agency law in Illinois, where the acts of the agent render the principal liable, such acts also render the agent liable. (See *Towns v. Yellow Cab Co.* (1978), 73 Ill. 2d 113, 382 N.E.2d 1217.) Further, municipal officers may be held liable for intentional torts, although the municipal officer's acts were ostensibly in performance of corporate duties, where such acts were, in fact, an intentional misuse of the powers of the municipal office holder. (*Idlehour Development Co. v. City of St. Charles* (1980), 88 Ill. App. 3d 47, 409 N.E.2d 544.) We do not interpret the supreme court's admonition in *Kelso-Burnett* against the undue expansion of the tort of retaliatory discharge to mean that other well-established principles of tort, agency and municipal law do not otherwise apply to the relatively new and developing tort of retaliatory discharge in Illinois. Nor are we aware of a public policy reason to so limit the tort of retaliatory discharge. (See, *e.g., Boyles v. Greater Peoria Mass Transit District* (1986), 113 Ill. 2d 545, 499 N.E.2d 435 (recognized availability of tort of retaliatory discharge against municipal employer but prohibited imposition of punitive damages against such employer in recognition of public policy against imposing punitive damages upon local taxpayers as reflected in section 2—102 of the Tort Immunity Act (Ill. Rev. Stat. 1987, ch. 85, par. 2—102), which grants local governmental entities immunity from punitive damage claims).) To hold otherwise would unduly weaken the tort of retaliatory discharge and defeat one of its

underlying purposes of preventing actions by employers in discharging their employees which are violative of public policy. *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 421 N.E.2d 876.

■ As Judge Shadur recognized in *Zurek*, deterrence is a goal of intentional-tort liability best served by holding the active wrongdoer liable in addition to the employer. (*Zurek v. Hasten* (N.D. Ill. 1982), 553 F. Supp. 745, 749; cf. *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353 (holding punitive damages would be allowed for tort of retaliatory discharge due to the need to deter such actions).) Further, Judge Shadur also recognized that to the extent a governmental employer was insulated by sovereign immunity, a plaintiff terminated on grounds offensive and violative of public policy would have no remedy if he could not sue a responsible co-employee or supervisor. (*Zurek v. Hasten* (N.D. Ill. 1982), 553 F. Supp. 745; cf. *Randi F. v. High Ridge YMCA* (1988), 170 Ill. App. 3d 962, 524 N.E.2d 966 (employer may not be liable for intentional acts of employee done solely for employee's own interest and, therefore, outside scope of employment); Ill. Rev. Stat. 1987, ch. 85, par. 2—101 *et seq.*) Based on the foregoing, we decline to follow the holding of the first district in *Morton* and hold that a cause of action for retaliatory discharge can be brought, as in other tort actions, against not only the plaintiff's employer but also against the plaintiff's supervisor, co-employee or agent of the employer, who commits the act of retaliatory discharge.

Defendant contends that the trial court's order of dismissal of the retaliatory discharge count may be affirmed on the ground that plaintiff's alleged discharge in retaliation for the activities of plaintiff would not be in contravention of any clearly mandated public policy. The trial court in dismissing with prejudice plaintiff's claim of retaliatory discharge against Lewis, individually, declined to base dismissal on a failure to allege facts sufficient to show a violation of a clearly mandated public policy. The trial court, relying on several cases involving retaliatory discharge, specifically found that plaintiff's complaint was not insufficient for failing to allege facts indicating a violation of a clearly mandated public policy. (*Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 421 N.E.2d 876; *Wheeler v. Caterpillar Tractor Co.* (1985), 108 Ill. 2d 502, 485 N.E.2d 372; *Petrik v. Monarch Printing Corp.* (1982), 111 Ill. App. 3d 502, 444 N.E.2d 588.) We agree in part with the trial court. The determination of what is a clearly mandated public policy has been called the Achilles heel of the principle underlying the tort of retaliatory discharge. (*Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 130, 421 N.E.2d 876, 878.)

■ "There is no precise definition of the term. In general, it can be said that public policy concerns what is right and just and what affects the citizens of the State collectively. It is to be found in the State's constitution and statutes and, when they are silent, in its judicial decisions. [Citation.] *** [A] matter must strike at the heart of a citizen's social rights, duties, and responsibilities before the tort will be allowed. ***
***

The cause of action is allowed where the public policy is clear, but is denied where it is equally clear that only private interests are at stake." (*Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 130-31, 421 N.E.2d 876, 878-79.) Public policy affecting the citizens of Illinois collectively for purposes of applying retaliatory discharge has been found in Federal law. (*Wheeler v. Caterpillar Tractor Co.* (1985), 108 Ill. 2d 502, 485 N.E.2d 372 (employee stated cause of action for retaliatory discharge where he alleged that he was fired in retaliation for refusing to work with radioactive material in violation of Nuclear Regulatory Commission's safety guidelines).) Thus far, Illinois courts have found a clearly mandated public policy in only two types of situations: (1) where the employee's discharge stems from asserting a worker's compensation claim; or (2) where the discharge is for an employee's reporting of, or refusal to engage in, the illegal activities of a fellow employee or the employer. *Russ v. Pension Consultants Co.* (1989), 182 Ill. App. 3d 769, 775, 538 N.E.2d 693, 694.

■ In the instant case, plaintiff alleged he was discharged in retaliation for: (1) refusing to slow down the WEPCO City electrical-power-supply negotiations in order to politically benefit Lewis in his campaign for mayor; (2) refusing to participate in Lewis' attempts to solicit post-election campaign contributions from city vendors; and (3) refusing to withhold information from the city council in violation of his duties under the Municipal Code. Looking at plaintiff's whole complaint and taking as true all well-pleaded facts and reasonable inferences therefrom (*Skinner v. Mahomet Seymour School District No. 3* (1980), 90 Ill. App. 3d 655, 413 N.E.2d 507), plaintiff's first two allegations of his retaliatory discharge count claim that plaintiff was discharged: (1) for refusing to agree solely for the political benefit of Lewis to not properly perform his official duties as director of electrical services in negotiating with WEPCO, and (2) for refusing to participate in Lewis' attempts to require political contributions from city vendors in order that such vendors could continue to do work for the City. As to plaintiff's first two allegations, we find that the criminal

statutes of our State evidence a clearly mandated public policy which may be violated if Lewis were allowed to discharge plaintiff in retaliation for his refusal to slow down the awarding of the WEPCO contract for the benefit of Lewis or for his reporting of the alleged activities of Lewis. Article 33 of the Criminal Code of 1961, entitled "Official Misconduct," proscribes the type of activities alleged by plaintiff to have been committed by Lewis or in which plaintiff alleges he refused to participate. (Ill. Rev. Stat. 1987, ch. 38, pars. 33—1 (bribery), 33—3 (official misconduct).) "There is no public policy more basic, nothing more implicit in the concept of ordered liberty [citation], than the enforcement of a State's criminal code." *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 132, 421 N.E.2d 876, 879.

■ However, plaintiff's third allegation that he was discharged in retaliation for refusing to acquiesce in Lewis' demand that he not discuss Lewis' negotiations with Commonwealth Edison with the city council in derrogation of his official duties as contained in the Municipal Code does not state a cause of action. Section 2—70 of the Municipal Code relied upon by plaintiff provides in part:

"Director of Electrical Services: Duties Generally

It shall be the duty of the director of electrical services to direct and coordinate the activities of the City's Electric Department, and be responsible for electricity distribution in the City and to review and make recommendations on the electrical installation in all new proposed connections. He shall confer with officials responsible for supplying electrical service and the maintenance thereof. He shall coordinate the use of manpower and equipment and consolidate purchase requests of the Department." (Geneva, Ill., Municipal Code ch. 2, par. 2—70 (1978).)

Plaintiff also cites section 12.17, which provides in part:

"Director of Electrical Services:

The duty of the director of electrical services shall be to supervise the maintenance, operation, construction and planned expansion of all electrical facilities *** and he shall be responsible for the determination of the general administration, operating and sales policies of the utility and, upon approval of the finance and public utility committee and the city council, shall see that policies are executed and adhered to, which policies shall supplement these provisions and shall be binding as if stated herein." Geneva, Ill., Municipal Code ch. 12, par. 12.17 (Supp. 1985).

Plaintiff's allegations of fact concerned Lewis' negotiations with Commonwealth Edison and plaintiff's attempts to discuss Lewis' negotiations with the city council. The ordinances relied upon by plaintiff do not reasonably lead to a conclusion that plaintiff's duties included discussing with the city council Lewis' decision to negotiate with Commonwealth Edison. Therefore, these ordinances do not support the allegation that plaintiff was discharged for refusing to violate his duties.

In sum, we hold that the trial court erred in dismissing plaintiff's count in retaliatory discharge against Lewis, individually, and decline to affirm the trial court's order of dismissal on the ground that plaintiff's complaint failed to allege facts sufficient to establish a firing in violation of a clearly mandated public policy.

■■■ ■ Next, we address plaintiff's argument that count III of his first amended complaint alleged sufficient facts to state a cause of action for tortious interference with an employment relationship. The tort of interference has long been recognized in Illinois. (*City of Rock Falls v. Chicago Title & Trust Co.* (1973), 13 Ill. App. 3d 359, 300 N.E.2d 331.) The court in *City of Rock Falls* stated:

"The theory of the tort of interference, it is said, is that the law draws a line beyond which no member of the community may go in intentionally intermeddling with the business affairs of others; that if acts of which complaint is made do not rest on some legitimate interest, or if there is sharp dealing or overreaching or other conduct below the behavior of fair men similarly situated, the ensuing loss should be redressed; and that the line of demarcation between permissible behavior and interference reflects the ethical standards of the community. [Citation.] The elements which establish a prima facie tortious interference are the existence of a valid business relationship (not necessarily evidenced by an enforceable-contract) or expectancy; knowledge of the relationship or expectancy on the part of the interferer; an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and resultant damage to the party whose relationship or expectancy has been disrupted. The interest protected is the reasonable expectation of economic advantage." (*City of Rock Falls v. Chicago Title & Trust Co.* (1973), 13 Ill. App. 3d 359, 362-63, 300 N.E.2d 331, 333.)

Two types of interference torts have developed in Illinois, tortious interference with contractual relations and tortious interference with prospective economic advantage. (*Belden Corp. v. Internorth, Inc.*

(1980), 90 Ill. App. 3d 547, 413 N.E.2d 98.) The court in *Belden* stated:

> "The elements of the tort of interference with contractual relations *** include: (1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages. [Citation.] The elements of the tort of interference with prospective advantage are similar, but not identical. The plaintiff must have a reasonable expectancy of entering a valid business relationship, and defendant must purposely interfere and defeat this legitimate expectancy, thereby causing harm to the plaintiff." *(Belden Corp. v. Internorth, Inc.* (1980), 90 Ill. App. 3d 547, 551-52, 413 N.E.2d 98, 101.)

Some formulations of tortious interference include "malice" as a necessary element, but this term has been interpreted in connection with the tort of interference to mean intentional interference without sufficient justification. *Belden Corp. v. Internorth, Inc.* (1980), 90 Ill. App. 3d 547, 552 n.1, 413 N.E.2d 98, 101 n.1; Restatement (Second) of Torts §766, comment *s* (1979).

The main distinction between the two torts lies in the greater protection afforded a certain and enforceable expectancy of benefits arising under a contract as opposed to an expectancy of future economic gain arising out of current or prospective business relationships not reduced to an enforceable contract. *(Belden Corp. v. Internorth, Inc.* (1980), 90 Ill. App. 3d 547, 413 N.E.2d 98.) Where the expectancy of the plaintiff involves continued employment in a position in which he serves at the will of the employer, the courts have recognized the tort of interference but have not always agreed upon which of the two theories to base such a cause of action. *(Belden Corp. v. Internorth, Inc.* (1980), 90 Ill. App. 3d 547, 552 n.2, 413 N.E.2d 98, 102 n.2; *Cashman v. Shinn* (1982), 109 Ill. App. 3d 1112, 441 N.E.2d 940 (prospective economic advantage); *Kemper v. Worcester* (1982), 106 Ill. App. 3d 121, 435 N.E.2d 827 (interference with contractual relationships); consider also *Levitt v. Gorris* (1988), 167 Ill. App. 3d 88, 520 N.E.2d 1169 (after finding no enforceable contractual right against employer to continued employment of at-will probationary police officer, court affirmed dismissal of count against supervisor for intentional interference with contractual relations, without considering issue of possible interference with legiti-

mate expectation of continued employment).) Since a plaintiff who served at the will of his employer has no enforceable contractual right to continued employment, his expectation of continued employment is an expectation of future economic advantage arising from a presumption that his employment will continue. (See *Kemper v. Worcester* (1982), 106 Ill. App. 3d 121, 435 N.E.2d 827; Restatement (Second) of Torts §768, comment *i* (1979); *Belden Corp. v. Internorth, Inc.* (1980), 90 Ill. App. 3d 547, 552 n.2, 413 N.E.2d 98, 102 n.2.) Accordingly, a claim that an employee at will was terminated by his employer as a result of the intentional and unjustified actions of another sounds in the tort of intentional interference with a prospective economic advantage. See *Belden Corp. v. Internorth, Inc.* (1980), 90 Ill. App. 3d 547, 413 N.E.2d 98.

 In the instant case, count III of plaintiff's first amended complaint, when liberally construed to do substantial justice between the parties (Ill. Rev. Stat. 1987, ch. 110, par. 2−603(c)) and taking as true all properly pleaded facts and reasonable inferences therefrom, is sufficient to state a cause of action for tortious interference with a prospective economic advantage. (*Fitzgerald v. Chicago Title & Trust Co.* (1978), 72 Ill. 2d 179, 380 N.E.2d 790 (complaint should not be dismissed for failure to state a cause of action unless it clearly appears no set of facts could be proved which would entitle plaintiff to recovery).) Plaintiff claimed that solely in retaliation for plaintiff's refusal to accede to the allegedly improper demands of Lewis, as previously described, Lewis caused a set of false charges to be filed with the city council in support of his dismissal with the intention of inducing the city council to dismiss plaintiff from his employment, and plaintiff was dismissed and damaged as a proximate result of Lewis' filing of false charges. Plaintiff would be entitled to recover if proof at trial established that plaintiff's expectation of continued at-will employment with the City was reasonable; that Lewis, intentionally and without justification, interfered with plaintiff's reasonable expectations of continued at-will employment; and that plaintiff was damaged by such interference. (See *City of Rock Falls v. Chicago Title & Trust Co.* (1973), 13 Ill. App. 3d 359, 300 N.E.2d 331; see also *Idlehour Development Co. v. City of St. Charles* (1980), 88 Ill. App. 3d 47, 409 N.E.2d 544 (municipal officers may be sued for tortious interference with contractual relations where officer intentionally and without justification misuses powers of office).) Accordingly, the trial court erred in granting, as to count III of plaintiff's first amended complaint, Lewis' motion for dismissal pursuant to section 2−615 of the Code (Ill. Rev. Stat. 1987, ch. 110, par. 2−

615) for failure to state a cause of action.

 █ Last, we address whether count IV of plaintiff's first amended complaint alleged sufficient facts to state a cause of action against Lewis as mayor of the City, and individually for a violation of plaintiff's civil rights under section 1983 of the Civil Rights Act (42 U.S.C. §1983 (1982)). It is well established that the loss of a position of employment which is held at will, and, therefore, not held as a matter of right, does not deprive a person of liberty or property in violation of section 1983 of the Civil Rights Act (42 U.S.C. §1983 (1982)). (*Cashman v. Shinn* (1982), 109 Ill. App. 3d 1112, 441 N.E.2d 940; *Salkin v. Washington* (N.D. Ill. 1986), 628 F. Supp 138.) However, where a governmental employee is discharged or disciplined for exercising his rights guaranteed under the first amendment, such actions by the governmental employer infringe upon constitutionally protected liberty interests and may be in violation of section 1983 of the Civil Rights Act (42 U.S.C. §1983 (1982)). (See; *e.g.*, *Rankin v. McPherson* (1987), 483 U.S. 378, 97 L. Ed. 2d 315, 107 S. Ct. 2891.) Additionally, a valid claim is stated under section 1983 of the Civil Rights Act (42 U.S.C. §1983 (1982)), where a governmental employee alleges he was discharged solely for his political affiliation or associations. (*Salkin v. Washington* (N.D. Ill. 1986), 628 F. Supp. 138.) In the instant case, plaintiff has pled sufficient facts, when taken as true along with all reasonable inferences therefrom, to state a cause of action under section 1983 of the Civil Rights Act (42 U.S.C. §1983 (1982)). While plaintiff's loss of his at-will employment alone is insufficient under section 1983 of the Civil Rights Act (42 U.S.C. §1983 (1982)), plaintiff's allegations that Lewis, as mayor, caused him to be dismissed in retaliation for refusing not to speak to the city council and for refusing to aid in collection of post-election campaign contributions are sufficient to state a cause of action under section 1983 of the Civil Rights Act (42 U.S.C. §1983 (1982)). (*Rankin v. McPherson* (1987), 483 U.S. 378, 97 L. Ed. 2d 315, 107 S. Ct. 2891; *Salkin v. Washington* (N.D. Ill. 1986), 628 F. Supp. 138.) Further, a municipal officer may be sued individually for violating a person's rights under section 1983 of the Civil Rights Act (42 U.S.C. §1983 (1982)). (*Salkin v. Washington* (N.D. Ill. 1986), 628 F. Supp. 138.) The trial court erred in dismissing count IV of plaintiff's first amended complaint. To the extent Lewis extensively argues his acts were authorized, or within the scope of his duties, these are affirmative matters not properly raised under section 2—615 of the Code (Ill. Rev. Stat. 1987, ch. 110, par. 2—615). (See Ill. Rev. Stat. 1987, ch. 110, par. 2—619.) Additionally, Lewis' arguments raise numerous questions of fact

not properly before the trial court when it entered its order nor properly before this court at the current stage of these proceedings. By our opinion, we express no views as to the merit of plaintiff's claims.

The decision of the circuit court dismissing with prejudice counts I, III, IV and VI of plaintiff's first amended complaint is reversed, and the cause is remanded for further proceedings consistent with the views expressed herein.

Reversed and remanded.

DUNN, J., concurs.

JUSTICE INGLIS, concurring in part and dissenting in part:
I concur in the majority's opinion as to counts III, IV and VI. I respectfully dissent from that portion of the opinion which reversed the trial court's dismissal with prejudice of count I. The well-reasoned decision of *Morton v. Hartigan* (1986), 145 Ill. App. 3d 417, 495 N.E.2d 1159, should be followed, and we should refuse to expand the tort of retaliatory discharge in the manner now adopted by the majority. Our supreme court's recent admonition in *Barr v. Kelso-Burnett Co.* (1985), 106 Ill. 2d 520, 478 N.E.2d 1354, against expanding the retaliatory discharge tort should not be ignored. In *Barr*, the court stated that "this court has not, by its *Palmateer* and *Kelsay* decisions, 'rejected a narrow interpretation of the retaliatory discharge tort' and does not 'strongly support' the expansion of the tort." (*Barr*, 106 Ill. 2d at 525.) Furthermore, the court in *Morton* refused to expand the tort to include supervisors of an employee, holding that the only proper party defendant is the employee's actual employer. *Morton*, 145 Ill. App. 3d at 421-22.

In the case at bar, the majority acts to expand the retaliatory discharge cause of action by allowing a new class of party defendants (supervisors, co-employees and agents of employers) to be added and endeavors to distinguish *Barr* by asserting that the supreme court was considering "clearly mandated public policy" in defining the scope of the limited tort of retaliatory discharge. The supreme court's hesitation to expand the definition of "clearly mandated public policy" certainly was not an invitation to add a whole new class of party defendants. A disagreement over what is or is not a "clearly mandated public policy" is certainly not the major expansion of the tort that the majority has adopted. To hold with the majority is to promote the expansion of a cause of action for a tort unknown at

610

common law. Such a broad expansion, for whatever salutary purpose, is more appropriate for the legislature. Giving every discharged person a potential cause of action against a supervisor, co-employee or agent of their employer should not be undertaken in the manner presented. I respectfully dissent.