**CHICAGO BOARD OF OPTIONS EXCHANGE, INC., Plaintiff,**

v.

**HARBOR INSURANCE COMPANY, Defendant.**

No. 89 C 8221.

United States District Court, N.D. Illinois, E.D.

June 6, 1990.

---

Marci A. Eisenstein, Aphrodite Kokolis, Schiff Hardin & Waite, Chicago, Ill., for plaintiff.

Steven H. Mora, David E. Stevenson, Williams & Montgomery, Ltd., Chicago, Ill., for defendant.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

On December 26, 1989, Harbor Insurance Company moved for judgment in its favor on the pleadings of Chicago Board of Options Exchange, Inc. ("CBOE"). See Rule 12(c), Fed.R.Civ.Pro. After reviewing the parties' briefs on the motion,[1] the court converted Harbor's motion to one for summary judgment under Rule 56. The parties have filed statements in accordance with the local rules, and now the motion is ready for decision.

These are the uncontested facts: Harbor is a California corporation whose principal place of business is Los Angeles, California. CBOE is a Delaware corporation whose principal place of business is Chicago, Illinois. On May 1, 1980, Harbor issued CBOE a directors and officers liability policy, effective from April 26, 1980 to April 26, 1983. The policy provided two types of coverage, one reimbursing CBOE for certain payments made as indemnity to CBOE's officers and directors (Section A) and one directly insuring CBOE's officers and directors for certain liabilities (Section B). More specifically, Harbor promised in Clause 1 of Section A:

This policy shall, subject to its terms, conditions and limitations as hereinafter provided, pay on behalf of [CBOE] loss (as hereinafter defined) arising from any claim or claims made during the policy period against each and every person ... who ... now is ... a director or officer of [CBOE] who is included in the meaning of those terms as defined in Clause 2(A) of this policy (who are hereinafter individually or collectively sometimes called the "directors"), by reason of any wrongful act (as hereinafter defined) in their respective capacities of directors or officers of [CBOE], but only when [CBOE] shall be required or permitted to indemnify the directors for damages, judgments, settlements, costs, charges or other expenses incurred in connection with the defense of any action, suit or proceeding to which the directors are a party or with which they are threatened ..., pursuant to the law, common or statutory, or the charter or by-laws of [CBOE] duly effective under law, which determines and defines such rights of indemnity.

Clause 2(C) defined "loss" as

any amount [CBOE] is required or permitted to pay to a director or officer as indemnity for a claim or claims against him arising out of those matters set forth in [Clause 1] above whether actual or asserted and, subject to the applicable limits and conditions of this policy, shall include damages, judgments, settlements and costs, charges and expenses, incurred in the defense of actions, suits or proceedings ... for which payment by [CBOE] may be required or permitted according to applicable law, common or statutory, or under provisions of [CBOE's] charter or by-laws effective pursuant to law; provided always that such subject of loss shall not include fines or penalties imposed by law or other matters which are uninsurable under

---

1. Aware that it was approaching this court's fifteen-page limit on briefs, CBOE relegated many of its arguments to single-spaced footnotes, producing a brief with an average of one lengthy footnote per page. The court looks with disfavor on such circumvention of the general rules of this court. Future attempts to evade the court's limits on the length of briefs will result in an appropriate sanction.

the law pursuant to which this policy shall be construed.

Clause 2(D) defined "wrongful act" as

any breach of duty, neglect, error, misstatement, misleading statement, omission or other act done or wrongfully attempted by the directors or any of the foregoing so alleged by any claimant or any matter claimed against them solely by reason of their being such directors.

In November 1982, the former chief enforcement counsel of the CBOE, Paul Sussman, filed suit in the Circuit Court of Cook County. Sussman named as defendants CBOE, the chairman of CBOE's board of directors, CBOE's president, its first vice president, and its senior vice president. In Count I of his complaint, Sussman alleged that these defendants fired him in retaliation for his urging his superiors to enforce the rules and regulations of the federal government and the CBOE, as well as for his pointing out conflicts of interest between CBOE officials and CBOE members. Sussman alleged that his discharge was wrong, and thus the *Sussman* defendants owed him $1 million. In Count II, Sussman alleged that *Sussman* defendants' actions were "willful and malicious." Sussman thus sought $10 million in punitive damages from them.

On February 13, 1987, CBOE notified Harbor that it had settled the *Sussman* matter for $99,000. Nearly five months later, CBOE further informed Harbor that its costs of defending against Sussman, including the settlement, were $430,696.81. Harbor has not paid CBOE anything towards this amount, and this suit has resulted. CBOE's complaint has two counts. Count 1 is for breach of contract—specifically, breach of Harbor's insurance policy. That policy does not say which law governs its construction, but the parties assume throughout their briefs that Illinois law governs this court's interpretation of the policy. The court will treat this as a stipulation. See *City of Clinton, Ill. v. Moffitt,* 812 F.2d 341, 342 (7th Cir.1987) (parties

may stipulate informally to applicable substantive law, within broad limits). Count 2 of CBOE's complaint is a claim for unreasonable delay in payment under an insurance policy, pursuant to § 155 of the Illinois Insurance Code, Ill.Rev.Stat. ch. 73, ¶ 767 (1987).

Harbor raises essentially three arguments in favor of the entry of summary judgment. Harbor's first contention starts out with the suggestion that under Illinois law, Paul Sussman could have recovered only from his employer, CBOE, for retaliatory discharge. Harbor refers to *Morton v. Hartigan,* 145 Ill.App.3d 417, 421–22, 99 Ill.Dec. 424, 427, 495 N.E.2d 1159, 1162 (1986), for this proposition. CBOE contends that at the time Sussman filed his complaint, however, no court had ruled on the issue, and that the only court to address it prior to *Morton* had held to the contrary. See *Zurek v. Hasten,* 553 F.Supp. 745, 749 (N.D.Ill.1982).

■ The question whether Sussman had a cause of action against CBOE's officers and directors for retaliatory discharge is fascinating,[2] but Harbor never explains why the answer to this question affects its contractual obligation to the CBOE. Subject to the terms of its policy, Harbor agreed to reimburse CBOE for any "loss ... arising from *any* claim or claims" against CBOE's directors and officers "by reason of *any* wrongful act...." The policy defined "wrongful act" as including "*any* ... act done ... by the directors *or* ... *so alleged* by any claimant ...." (Emphases added.) Harbor did not confine its obligation to claims which had legal merit, or those filed by CBOE's stockholders, or those filed in federal court. The court is obliged to hold Harbor to the terms of its policy: any claim against an officer or director for a wrongful act, for which CBOE had to indemnify that officer or director, triggers Harbor's obligation to reimburse CBOE. See *Ratcliffe v. Int'l Surplus Lines Ins. Co.,* 194 Ill.App.3d 18, 29–30,

---

**2.** Other appellate courts have disagreed with *Morton.* See *Fellhauer v. City of Geneva,* 190 Ill.App.3d 592, 600–02, 137 Ill.Dec. 846, 851–52, 546 N.E.2d 791, 796–97 (1989), leave to appeal granted, 129 Ill.2d 563, 140 Ill.Dec. 670, 550 N.E.2d 555 (1990), *Bragado v. Cherry Electrical Products Corp.,* 191 Ill.App.3d 136, 142–43, 138 Ill.Dec. 476, 480, 547 N.E.2d 643, 647 (1989).

141 Ill.Dec. 6, 13–14, 550 N.E.2d 1052, 1059–60 (1990) (in interpreting directors and officers policy, court should not modify otherwise unmodified terms). Thus, whether Sussman's claims against CBOE's officers and directors would have survived a motion to dismiss in the Illinois courts has no bearing on Harbor's promise to CBOE.[3]

■ Harbor fares somewhat better with its second argument, for unlike its first contention, Harbor roots this one in the language of its policy. As noted earlier, Clause 2(C) of Harbor's policy contained an important exception to its definition of loss: "such subject of loss shall not include fines or penalties imposed by law or other matters which are uninsurable under the law pursuant to which this policy shall be construed." Harbor contends that the acts which CBOE's directors and officers allegedly perpetrated are wholly uninsurable. The parties agree that under Illinois law, the act of retaliatory discharge is an intentional tort. See *U.S. Fire Ins. Co. v. Beltmann North American Co.*, 883 F.2d 564, 568–69 (7th Cir.1989) (applying Illinois law). Harbor argues that one may not insure himself or herself for his or her own intentional torts under Illinois law. This may be the general rule, see *Davis v. Commonwealth Edison Co.*, 61 Ill.2d 494, 500–01, 336 N.E.2d 881, 885 (1975), one which one Illinois court has applied in holding that an insurer need not defend its insured against the tort of retaliatory discharge, see *Rubenstein Lum. Co. v. Aetna L. & Cas. Co.*, 122 Ill.App.3d 717, 718–19, 78 Ill.Dec. 541, 543, 462 N.E.2d 660, 662 (1984).

If it were the rule that one may not insure himself or herself for his or her own intentional torts,[4] it would not determine the outcome of this case. CBOE did not insure itself with Harbor against its own intentional torts. Rather, subject to the

limitations of Harbor's policy, CBOE insured itself against the intentional torts of its officers and directors. Harbor has referred the court to nothing which puts forth the proposition that a corporation may not consistent with Illinois law insure itself for liabilities stemming from the intentional torts of its directors and officers. To the contrary, most Illinois authorities indicate that such insurance would not be against the public policy of that state. In *Scott v. Instant Parking, Inc.*, 105 Ill. App.2d 133, 245 N.E.2d 124 (1969), the court noted the difference between a corporation's attempt to insure itself for its own acts of wilful and wanton misconduct, and its attempt to insure itself for liabilities stemming from the wilful and wanton misconduct of its agents and servants. The court noted, "There is no reasonable basis to declare the latter type insurance is against public policy." The Illinois Business Corporation Act of 1983, Ill.Rev.Stat. ch. 32, ¶¶ 1.01 et seq. (1987), expressly gives corporations great latitude in indemnifying officers, directors, employees, and agents for a wide range of civil and criminal liabilities. See *id.* at ¶ 8.75(a)-(c). The Act also permits a corporation to purchase and maintain insurance on behalf of these persons, "whether or not the corporation would have the power to indemnify such person against such liability under the provisions of [¶ 8.75]." *Id.* at ¶ 8.75(g). This indicates to the court that there is no public policy in Illinois against a corporation's insuring for liabilities stemming from the intentional torts of its officers and directors, and hence such liabilities—including those stemming from retaliatory discharge—are not "uninsurable" under Illinois law.

Because a corporation may insure against losses stemming from claims of retaliatory discharge brought against the corporation's officers and directors, the

---

**3.** On page 12, note 4, of Harbor's Reply Brief in support of its motion Harbor contends that the merits of Sussman's claims bears on CBOE's obligation to mitigate its costs in defending against those claims. Since Harbor did not raise this argument in its opening brief, the court will not consider it now.

**4.** One court in this district has held that a person may insure against compensatory damages flowing from his or her own intentional torts under Illinois law. See *U.S. Fire Ins. Co. v. Beltmann North American Co.*, 695 F.Supp. 941, 947–50 (N.D.Ill.1988) (Shadur), rev'd on other grounds, 883 F.2d 564 (7th Cir.1989).

court must deny Harbor's motion for summary judgment. Harbor raises one additional argument, that punitive damages are uninsurable under Illinois law, but Harbor would not be entitled to summary judgment on CBOE's complaint were it to prevail on this question. The parties also have not discussed what could be a difficult problem in apportioning CBOE's losses between Counts 1 and 2 of Sussman's complaint. In view of this, the court declines to rule on the question of the insurability of punitive damages under Illinois law until the question has more than academic significance to the outcome of Harbor and CBOE's dispute.

The court denies Harbor's motion for summary judgment.